IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER NELSON, | ) | CASE NO. 3:17CV02428 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE DONALD J. NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| ED SHELDON | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Christopher Nelson ("Nelson" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Nelson is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Nelson*, Lucas County Court of Common Pleas Case No. G-4801-CR-0201402708-000.  For the following reasons, the undersigned recommends the Petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Nelson's conviction as follows:

> {¶ 2} In October 2014, appellant was indicted and charged with four felony offenses stemming from the gang-related shooting of Markiese Chandler and Josean Fleming that occurred in April 2010. Chandler was killed in the shooting. A third victim, Jovon Williams, fled the scene during the shooting and was not injured.

> {¶ 3} Witnesses to the shooting informed law enforcement personnel that three assailants approached a group of three men in an area in Toledo known to be occupied by members of the Beehive Crips gang. However, the witnesses were unable to see the assailants' faces. Consequently, authorities were initially unable to identify and prosecute those responsible.

> {¶ 4} Two days prior to the shooting, appellant was involved in an altercation outside of the Red and White store in Toledo. At that time, appellant fired three shots at Ronald Ramsey with his .22 caliber Walther pistol, striking him once in the ankle. Appellant was subsequently convicted of aggravated robbery with a firearms specification and was sentenced to a term of imprisonment for that offense.

> {¶ 5} While in prison on the aggravated robbery charge, appellant was caught with a knife on his person. As a result, appellant was charged with possession of a deadly weapon under detention, a second degree felony. In an effort to reduce the potential time he was facing on this charge or to reduce the time he was currently serving for his aggravated robbery conviction, appellant informed state troopers that he had information concerning the murder of Markiese Chandler and was willing to testify against Jimmy Henry and Byron Mitchell, the alleged perpetrators, in exchange for a deal.

> {¶ 6} In an effort to ascertain the usefulness of appellant's information, Toledo police detectives Elizabeth Kantura, Robert Schroeder, and Deb Hahn traveled to the prison to meet with appellant on August 6, 2012. According to Kantura, the meeting took place in a small administrative room inside the prison. Appellant was handcuffed during the interview, which lasted less than 30 minutes.

> {¶ 7} At the interview, appellant informed authorities that he was present at the scene of the murder. He went on to explain that he drove to the scene with Henry and Mitchell, parked the car, and approached the three victims who were walking along the side of the street. Appellant insisted that Henry was the first to fire shots. Appellant also admitted to firing shots, but stated that he was not aiming toward the victims and therefore was not the one responsible for the gunshot

2

injuries. When pressed for further details, appellant was able to describe what he and the others were wearing, the type of vehicle they were driving, how they chased down one of the victims, and how they fled the scene. Up to this point, Kantura had not informed appellant of his Miranda rights. Kantura reasoned that she was not required to provide Miranda warnings because appellant voluntarily asked her to speak with him and she was skeptical as to the utility of the information appellant would provide. Further, Kantura stated that her purpose for interviewing appellant was merely to get his statement as a witness to the murder.

{¶ 8} After appellant provided the foregoing details to Kantura, Schroeder began questioning him concerning another homicide investigation. Prior to doing so, Schroeder informed appellant of his Miranda rights because appellant was a suspect in that case. The interview continued, and Kantura eventually returned to her questioning of appellant regarding the murder of Markiese Chandler. Appellant stated that he used a .22 caliber Walther pistol during the shooting.

{¶ 9} Three weeks after appellant was initially questioned, Kantura returned to the prison for a follow-up interview. Once again, Kantura did not read appellant his Miranda rights prior to questioning. According to her testimony, Kantura did not feel that it was necessary to inform appellant of his Miranda rights at this point because appellant was a witness, not a suspect, and she was merely gathering follow-up information from appellant concerning the vehicle that was used by the assailants.

{¶ 10} Almost two years later, on April 8, 2014, appellant again requested an interview with detectives regarding the murder of Markiese Chandler. This time, however, Schroeder had appellant transported to police headquarters for the interview. After informing appellant of his Miranda rights, which appellant waived, Schroeder questioned appellant regarding the murder.

{¶ 11} Prompted by statements provided by appellant during the April 8, 2014 interview, detective Jay Gast conducted a follow-up interview with appellant on June 11, 2014. At that interview, which took place at police headquarters, appellant waived his Miranda rights and provided additional statements concerning the murder of Markiese Chandler.

*State v. Nelson*, 2016-Ohio-7115, ¶¶ 2-11 (Ohio App. 6th Dist. Sept. 30, 2016).

## II. Procedural History

**A.  Trial Court Proceedings**

In October 2014, a Lucas County Grand Jury charged Nelson with one count of

aggravated murder in violation of Ohio Rev. Code ("ORC") §2903..02(B) and §2929.02 (Count One), two counts felonious assault in violation of O.R.C. §2903.11(A)(2) and (D) (Counts Two and Three), and one count of participation in a criminal gang in violation of O.R.C. §2923.42(A) and (B) (Count Four).  Counts One through Three contained firearm specifications.  (Doc. No. 7-1, Exh. 1.)  Nelson pled not guilty as to all counts.  (Doc. No. 7-1, Exh. 2.)

On February 13, 2015, Nelson, through counsel, filed a Motion to Suppress "any and all oral statements made by [Nelson] that the State may seek to introduce at trial," arguing the statements were taken in violation of the Fifth and Fourteenth Amendments.  (Doc. No. 7-1, Exh. 3.)  The State filed a memorandum in opposition.  (Doc. No. 7-1, Exh. 4.)  The state trial court conducted a hearing on Nelson's motion on April 10, 2015.  (Doc. No. 7-1, Exh. 5.)  Following this hearing, the State filed a supplemental memorandum in opposition.  (Doc. No. 7-1, Exh. 6.)  The state trial court ultimately denied Nelson's Motion on May 4, 2015.  (Doc. No. 7-1, Exh. 7.)

On June 4, 2015, the state filed a Notice of Intent to use other acts evidence.  (Doc. No. 7-1, Exh. 8.)  Nelson, through counsel, filed response in opposition.  (Doc. No. 7-1, Exh. 9.)

Jury trial commenced on June 6, 2015.  (Doc. No. 7-3 at Tr. 1.)  Pursuant to Ohio Crim. R. 29, Nelson made an oral motion for acquittal at the close of the State's case.  (Doc. No. 7-1, Exh. 10.)  The trial court denied this motion.  (*Id*.)

On June 12, 2015, the jury found Nelson guilty of murder (Count One), two counts of felonious assault (Counts Two and Three), and participation in a criminal gang (Count Four).  Doc. No. 7-1, Exh. 12.)  The jury did not find Nelson guilty of the firearm specifications.  (*Id*.)

The state trial court conducted a sentencing hearing on June 16,[1] 2015, at which time Nelson was sentenced to life with parole eligibility after 15 years for the murder change, seven years for the first felonious assault charge, six years for the second felonious assault charge, and seven years for the participation in a criminal gang charge.  (Doc. No. 7-1, Exh. 13.)  The state trial court ordered the sentences to be served consecutively to each other and consecutive to the prison sentences Nelson was serving for unrelated criminal convictions.  (*Id*.)

**B.     Direct Appeal**

On July 14,  2015, Nelson, through counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court").  (Doc. No. 7-1, Exh. 15.)  In his appellate brief, Nelson raised the following assignments of error:

    I.      The trial court erred to the prejudice of appellant by denying his Motion to Suppress.

    II.     Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Constitution of the State of Ohio.

    III.    The trial court erred in denying Appellant's Rule 29 Motion upon completion of the State's case in chief.

    IV.    The jury's verdict was against the manifest weight of evidence presented at trial.

(Doc. No. 7-1, Exh. 16.)  The State filed a brief in response.  (Doc. No. 7-1, Exh. 17.)

On September 30, 2016, the state appellate court affirmed Nelson's convictions and prison sentences.  (Doc. No. 7-1, Exh. 18.)

---

[1]    The state trial court issued a *nunc pro tunc* entry on July 14, 2015 to reflect the correct sentencing hearing date of June 16, 2015.  The original entry read June 17, 2015.  (Doc. No. 7-1, Exh. 14.)

5

On October 17, 2016, Nelson, proceeding *pro se*, filed a Notice of Appeal with the

Supreme Court of Ohio.  (Doc. No.7-1, Exh. 19.)  In his Memorandum in Support of

Jurisdiction, Nelson raised the following Propositions of Law:

> I.  My case is very important.  My case is *Miranda* right in the case of
> *Miranda* right.  I will not be the last case the Supreme Court review.
> The court should grant review.  I was a winess [sic] first to a murder I
> was not — to *Miranda* right.  2 years later, I was do in court on knife
> charge with possession of a deadly wepon [sic] under detention a
> second felony in an effort to reduce the charge.  This time however
> Schroeder afer [illegible] me *Miranda* right which I waived.  *In the
> case of *Moran v. Burbine* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed2d 410,
> 1986 U.S. HN3 The inquiry into waiver of *Miranda* right has two
> distinct dimensions.  First the relinquishment of the right must have
> been voluntry [sic] that it was the produt [sic] of a free and deliberate
> choice rather than intimidation, coercion, or must have been made with
> a full awareness of both the nature of the right being abandoned and the
> consequences of the decision to abandon it.  HN1 Prior to the initiation
> of questioning they must fully apprise the suspect of the state intention
> to use his statements to secure a conviction.  The court recognized that
> custodial interrogations by their very nature generate compelling
> pressures which work to undermine him to speak where he would not
> otherwise do that Great general interest constitution.  You
>
> In October 2014 Appellant was indicated and charged with four felony
> offenses stemming from the gang-related shooting of Markiese
> Chandler and Josean Fleming that occurred in April 2010.  Chandler
> was killed in the shooting. A third victim Jovon Williams fled the scene
> during the shooting and was not injured. While in prison on the
> [aggravated] robbery charge appellant was caught with a knife.  In an
> effort to reduce the In an effort to ascertain the usefulness appellant
> information Toledo Police Det Elizabeth Kantura, Robert Schoeder and
> Deb Hahn traveled to the prison to meet with Appellant on August 6,
> [2012].  According to Dantura the meeting took place in a small
> administrative room.  At the interview Appellant informed authorities
> that he was present at the scene of the murder.
>
> In my case I was try to get a deal but was not tell that I will be charged
> shooting of Markiese Chandler I was informing of my *Miranda* right
> which I waived but the case *Moran v. Burdine* 475 U.S. the court tell
> the law prior to the initiation of questioning they must fully apprise the
> suspect of the State intention to use his statements to secure a

conviction.  I was not tell that the statements I made to Det was to be use a secure a conviction.  If I was apprise that the Det was try to use the statements I will not be made that statements.  The court tell that I made a voluntary statements but the rec. will not show that statement was volontry[sic].  In the case of *Shawn v. Pettijean* HN11 when accused decision to speak is motivated by police officers statement construing direct or indirect or indirect promises of leniency or benefit or other [illegible] regarding the possibility of probation which where misstatements of the law his incriminating statements not been freely self-determined have been.  I was promises that it would go to be take off my time but the [video] the jury was play a [illegible] video.

If the Ohio Supreme Court accept my case in review my case in the trial court I will win the accepts t you in god [illegible].

(Doc. No. 7-1, Exh. 20.)  The State did not file a response.  (Doc. No. 7-1, Exh. 21.)

On March 15, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 7-1, Exh. 22.)

## C.    Federal Habeas Petition

On November 20, 2017,[2] Nelson, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

**GROUND ONE**: My Fifth Amendment Self-Incrimination
I was never aware of the police
trying too[sic] use my statements too[sic]
get a conviction.  I was aware that
I was a witnesses for the State
my interviews that was recordingg[sic]
was edited show the part that I was too[sic] be a witness.

---

[2]      Under the mailbox rule, the filing date of a *pro se* petition is the date the petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988). However, Nelson has not provided the Court with the date he placed his petition in the prison mailing system, instead choosing to leave this portion of the §2254 form blank.  (Doc. No. 1 at 14.)  As the Respondent has not raised any arguments regarding the timeliness of Nelson's petition, the Court will consider the petition filed as of the date it arrived at the Court for filing.

7

**GROUND TWO**: Ineffective assistance of counsel
Failing to retain psychological expert
[specializing] in field of false confessions
the witness list containing 62 names
the State have just me on
video I was too[sic] be a witness
my counsel never exhaust at trial

**GROUND THREE**:  Denying Rule 29 motion
that the State did not prove all elements Counts
4 felonious participates criminal gang.
The State play me admits that I was Little Head
I was too [sic] be a what Little Head too[sic] to a witness.

**GROUND FOUR**:    Manifest weight of the evidence
The evident that was at my
trial was false evident
from me the recording from
me I was too[sic] be a witness
that [why] it was manifest weight of the evidence.

(Doc. No. 1.)

On February 23, 2018, Warden Ed Sheldon ("Respondent") filed his Return of Writ.

(Doc. No. 7.)  Nelson filed a Traverse on April 20, 2018.  (Doc. No. 9.)

### III.  Procedural Default – Grounds Two and Three

**A.**    **Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the

highest court in the state in which the petitioner was convicted has been given a full and fair

opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th

Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure

8

to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

9

to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

11

**B.      Application to Petitioner**

    **1.      Ground Two – Ineffective Assistance of Counsel**

Respondent contends[4] Ground Two of Nelson's Petition is procedurally defaulted.  (Doc. No. 7 at 22.)  Respondent asserts because Nelson did not raise this claim to the Supreme Court of Ohio it is "abandoned and waived."  (*Id.* at 24.)  Respondent maintains Nelson is unable to establish cause, prejudice, or miscarriage of justice in order to avoid procedural default.  (*Id.* at 24-25.)  Nelson does not address Respondent's arguments regarding the procedural default of this claim.  (*See* Doc. No. 9 at 19-25.)

The Court finds Nelson failed to fairly present Ground Two[5] of his federal habeas petition for one complete round of state appellate review and it is therefore procedurally defaulted.  Nelson raised this ground for relief in his direct appeal to the state appellate court, which considered it on the merits and rejected it.  (Doc. No. 7-1, Exh. 16, 18.)  Thereafter, Nelson filed an appeal with the Supreme Court of Ohio.  (Doc. No. 7-1, Exh. 19.)  In his memorandum in support of jurisdiction to the Supreme Court of Ohio, Nelson did not include any references to his representation at trial; he only presented his arguments regarding his

---

    [4]    Respondent also argues Ground Two is "improperly pled" and "fails to state a constitutional claim."  (Doc. No. 7 at 22.)  However, in reading Nelson's state filings and his Traverse as a whole, the Court is able to ascertain Nelson's arguments regarding the ineffective assistance of trial counsel.  Given Nelson's *pro se* status, the Court will liberally construe his Petition and declines to dismiss Ground Two on this basis.

    [5]    Ground Two reads as follows:  Ineffective assistance of counsel
Failing to retain psychological expert specializing in field of false confessions the witness list containing 62 names the State have just me on video I was too[sic] be a witness my counsel never exhaust at trial.  (Doc. No. 1 at 7.)

12

*Miranda* rights.  (Doc. No. 7-1, Exh. 20.)  Even providing him with the latitude afforded to *pro se* petitioners, because Nelson failed to mention his trial counsel in his memorandum in support of jurisdiction, it is impossible for this Court to find this ground for relief was presented to the Supreme Court of Ohio.  *See Pryor v. Miller*, 2017 WL 5632876, *6 (N.D. Oct. 26, 2017), *report and recommendation adopted by* 2017 WL 5614471 (N.D. Ohio Nov. 21, 2017).  Moreover, Nelson has not provided any explanation as to how he intended to raise this argument to the Supreme Court of Ohio.

A constitutional claim may be procedurally defaulted when a petitioner fails to fairly present it to the highest state court through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847.  *See also Houston v. Waller*, 420 Fed. App'x 501, Fn 7 (6th Cir. Apr. 20, 2011).  In Ohio, "one complete round of the State's established appellate review process" includes presenting a constitutional claim not only to the state trial and appellate court, but the Supreme Court of Ohio as well.  *See Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003)(quoting *O'Sullivan*, 526 U.S. at 845.).  If a petitioner fails to raise a claim on direct appeal which could have been fully litigated at trial or on direct appeal, it is deemed waived under Ohio's doctrine of *res judicata*.  *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).  Here, Nelson did not raise an ineffective counsel claim to the Supreme Court of Ohio on direct appeal. Thus, he is foreclosed from doing so by virtue of *res judicata*.  Ohio's *res judicata* doctrine is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions.  *See, e.g., Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

Further, Nelson does not argue, nor is the Court aware of, any other state court remedy

13

which continues to be available for him to present his ineffective assistance of counsel claim to the Supreme Court of Ohio. *See Pedelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009)("In situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted."). Indeed, Nelson has not pursued post-conviction relief under Ohio Rev. Code § 2923.21 or sought to re-open his appeal pursuant to Ohio App. R. 26(B), nor has he offered any explanation for his failure to do so. As the state appellate court affirmed his convictions and the Supreme Court of Ohio denied his leave to appeal nearly two years ago (in September 2016 and March 2017, respectively), the time for Nelson to timely seek relief under either § 2923.21 or Rule 26(B) is long expired.

Accordingly, the Court finds Ground Two of Nelson's Petition to be procedurally defaulted.

### a. Cause and Prejudice

Nelson may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren,* 440 F.3d at 763. Nelson does not provide any argument regarding cause or prejudice. He offers no explanation why he did not raise his ineffective assistance of trial counsel claims to the Supreme Court of Ohio.

Moreover, Nelson cannot claim ineffective assistance of appellate counsel as "cause," for his failure to raise Ground Two to the Supreme Court of Ohio on direct appeal. While the ineffective assistance of appellate counsel may constitute cause for a procedural default, *Murray*, 477 U.S. at 488, 106 S.Ct. 2639, Nelson did not have a constitutional right to counsel when

14

filing his appeal with the Supreme Court of Ohio. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)("[T]he right to appointed counsel extends to the first appeal as of right, and no further."). Because he did not have a constitutional right to counsel when filing his appeal with the Supreme Court of Ohio, he cannot claim constitutional right to the effective assistance of that counsel.

As Nelson is unable to establish cause to excuse his procedural default, the Court declines to address the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir.2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice."); *Group v. Robinson*, 158 F.Supp.3d 632, 651 (N.D. Ohio Jan. 20, 2016).

Accordingly, and for all the reasons set forth above, the Court finds Nelson has failed to establish cause and prejudice to excuse the procedural default of Ground Two.

### b.      Actual Innocence

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324; *see also*

*Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

Nelson provides no new, reliable evidence of his innocence which was not presented at trial. Rather, he asserts the police coerced him into placing himself at the scene of the crime. (Doc. No. 9 at 17-18.) Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

Accordingly, and in light of the above, it is recommended Ground Two of Nelson's habeas petition be DISMISSED as procedurally defaulted.

### 2. Ground Three – Rule 29 Motion/Sufficiency of the Evidence

Respondent contends Ground Three of the Petition is also procedurally defaulted. (Doc. No. 7 at 31.) Respondent asserts this claim is "abandoned and waived" because Nelson did not present it to the Supreme Court of Ohio. (*Id*. at 32.) Respondent maintains Nelson is unable to establish cause, prejudice, or miscarriage of justice in order to avoid the procedural default. (*Id*. at 33-34.) Nelson does not address Respondent's arguments regarding the procedural default of this claim. (*See* Doc. No. 9 at 26-30.)

The Court finds Nelson failed to fairly present Ground Three[6] of his federal habeas petition for one complete round of state appellate review and it is therefore procedurally defaulted. Nelson raised the argument the State had failed to prove all the elements of his participation in a criminal gang conviction to the state appellate court on direct appeal. (Doc.

---

[6]    Ground Three reads as follows: Denying Rule 29 motion that the State did not prove all elements Counts 4 felonious participates criminal gang. The State play me admits that I was Little Head. I was too [sic] be a what Little Head too[sic] to a witness. (Doc. No. 1 at 8.)

16

No. 7-1, Exh. 16.)  The state appellate court considered this argument on the merits and rejected it.  (Doc. No. 7-1, Exh. 18.)  Thereafter, Nelson filed an appeal with the Supreme Court of Ohio. (Doc. No. 7-1, Exh. 19.)  In his memorandum in support of jurisdiction to the Supreme Court of Ohio, Nelson did not include any arguments or reference to the trial court's Rule 29 ruling, his participation in a criminal gang conviction, or his association with the Little Head gang.  (Doc. No. 7-1, Exh. 20.)  Even construing Nelson's memorandum in support of jurisdiction as liberally as possible, the Court cannot find he raised this ground for relief to the Supreme Court of Ohio. *See Pryor v. Miller*, 2017 WL 5632876, *6 (N.D. Oct. 26, 2017), *report and recommendation adopted by* 2017 WL 5614471 (N.D. Ohio Nov. 21, 2017).

As noted *supra*, a petitioner must fairly present his constitutional claims not only to the state trial and appellate court, but the Supreme Court of Ohio as well, in order to avoid procedural default.  *Caver*, 349 F.3d. at 346.  Because Nelson did not raise this claim to the Supreme Court of Ohio on direct appeal, he is now foreclosed from doing so by virtue of *res judicata*.  This constitutes an adequate and independent state ground to procedurally bar the claim on federal habeas review.  *See Durr*, 487 F.3d 423 at 432.  *See also Pedelski*, 576 F.3d at 605 ("In situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted.").  Moreover, there is no mechanism by which Nelson could now return to state court and assert this claim to the Supreme Court of Ohio. Accordingly, the Court finds Ground Three of Nelson's Petition procedurally defaulted.

In his Petition, Nelson suggests he did not raise this claim because his "lawyer was not for [him.]"  (Doc. No. 1 at 9.)  He provides no further argument or explanation.  Even if the

Court were to construe this as an ineffective assistance of counsel argument, it would fail.  As discussed *supra*, Nelson cannot claim ineffective assistance of appellate counsel in relation to his appeal with the Supreme Court of Ohio.  Moreover, he has not provided any new and reliable evidence to establish actual innocence.  Thus, the Court finds no basis for excusing the procedural default of this claim.

Accordingly, and in light of the above, it is recommended Ground Three of Nelson's habeas petition be DISMISSED as procedurally defaulted.

### IV.  Review on the Merits

**A.     Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct.

2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49.  *See also Lopez v. Smith*,135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v.*

19

*Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.  Ground One – Motion to Suppress/*Miranda* Warnings

In his first ground for relief, Nelson argues the state trial court erred in denying his motion to suppress statements obtained without *Miranda* warnings. (Doc. No. 9 at 12, 14.) He contends these statements violated the Fifth Amendment because he "was led to believe that as a result of his voluntary statements he would be receiving or making a deal with the state for a lighter penalty" on an unrelated criminal conviction. (*Id.* at 14.) Nelson asserts the police

20

"never once told him he was a suspect" and "never informed him that they were going to use the information to *secure a conviction*."  (*Id.*)(emphasis in original)  He argues he "was in fact coerced."  (*Id*. at 15.)

Respondent argues[7] Nelson cannot meet his burden of showing his statements were not voluntary.  (Doc. No. 7 at 20.)  He maintains it was Nelson "who actually invited [the police] to the prison to speak with him regarding his involvement in this case."  (*Id.*)  Respondent contends Nelson was not in *Miranda* custody when making his statements and "was therefore not entitled to *Miranda* warnings prior to police questioning."  (*Id*. at 21-22.)

The Fifth Amendment to the United States Constitution, applicable to the states by the Fourteenth Amendment, provides no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V, XIV.  Statements obtained during a custodial interrogation cannot be used against an individual unless procedural safeguards have been taken to secure that individual's right against self-incrimination.  *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  Thus, prior to any custodial interrogation, police officers must warn a suspect "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Miranda*, 384 U.S. at 444.

In order for the procedural safeguards of *Miranda* to apply, however, a suspect must be in

---

[7]    Respondent also argues Ground One is "improperly pled" and  "fails to state a constitutional claim."  (Doc. No. 7 at 13.)  However, when reading Nelson's state filings and his Traverse as a whole, Nelson's arguments regarding the Motion to Suppress and alleged underlying *Miranda* violations are ascertainable.  Given Nelson's *pro se* status, the Court will liberally construe his Petition and declines to dismiss Ground One on this basis.

custody when making the incriminating statements.  *See Maryland v. Shatzer*, 559 U.S. 98, 112 (2010).  Custody is "a term of art that specifies circumstances that are thought generally to present a serious danger of coercion."  *Howes v. Fields*, 565 U.S. 499, 508-509 (2012).  If a suspect is "not in custody as that term has been defined by the Supreme Court, his Fifth Amendment protection against compelled self-incrimination is not implicated."  *Elliot v. Burt*, 2016 WL 1698402, *4 (E.D. Mich. Apr. 28, 2016).  Moreover, "imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*."  *Howes*, 565 U.S. at 511. The determination of whether or not a prisoner is in *Miranda* custody is based upon whether the prisoner is in a situation "'in which the concerns that powered the *[Miranda]* decision are implicated.'"  *Howes*, 565 U.S. at 514 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440, (1984)).

In making a *Miranda* custody determination a court must  "ascertain whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'"  *Id.* at 509. (internal citations omitted)(quoting *Stansbury v. California*, 511 U.S. 318, 322-323 (1994)(per curiam) and *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).).  A court must analyze "all the circumstances surrounding the interrogation" to determine if it is a custodial interrogation for purposes of *Miranda*.  *Stansbury*, 511 U.S. at 322.  Factors relevant to this determination include: 1) the location of questioning, 2) the duration of questioning, 3) statements made during the interview, 4) the presence or absence of physical restraints during questioning, and 5) whether the interviewee was released at the end of the questioning.  *Howes*, 565 U.S. at 509.  Moreover, a police officer's undisclosed plan for the questioning has no bearing upon whether a suspect is "in

22

custody," so as to require *Miranda* warnings. *Stansbury*, 511 U.S. at 324. Instead, the relevant

inquiry is "how a reasonable man in the suspect's position would have understood his situation."

*Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

The state appellate court considered Nelson's claim on direct appeal and rejected it as

follows:

{¶ 17} In his first assignment of error, appellant argues that the trial court
erred in denying his motion to suppress.

{¶ 18} Appellate review of a trial court's ruling on a motion to suppress
presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d
152, 2003–Ohio–5372, 797 N.E .2d 71, ¶ 8. "An appellate court must accept
the trial court's findings of fact if they are supported by competent, credible
evidence. Accepting these facts as true, the appellate court must then
independently determine, without deference to the conclusion of the trial
court, whether the facts satisfy the applicable legal standard." (Citations
omitted.) *Id.*

{¶ 19} Here, appellant argues that his statements should be suppressed
because they were the product of a custodial interrogation that took place
without a waiver of his *Miranda* rights. Appellant notes the fact that
Schroeder informed him of his *Miranda* rights prior to questioning as
support for his contention that he was in custody at the time and was
therefore entitled to notification of his *Miranda* rights prior to Kantura's
initial questioning. Appellant does not challenge the validity of the
subsequent interviews, but insists that the statements he made during those
interviews should be suppressed as fruits of the poisonous tree stemming
from the alleged constitutional defects in Kantura's initial interrogation.

{¶ 20} "[A] defendant who is subjected to custodial interrogation must be
advised of his or her *Miranda* rights and make a knowing and intelligent
waiver of those rights before statements obtained during the interrogation
will be admissible." *State v. Treesh*, 90 Ohio St.3d 460, 470, 739 N.E.2d 749
(2001). "Fidelity to the doctrine announced in *Miranda* requires that it be
enforced strictly, but only in those types of situations in which the concerns
that powered the decision are implicated." *Berkemer v. McCarty*, 468 U.S.
420, 437, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). "Voluntary confessions
are not merely a proper element in law enforcement, they are an unmitigated
good, essential to society's compelling interest in finding, convicting, and
punishing those who violate the law." (Internal quotation marks and citations

omitted). *Maryland v. Shatzer*, 559 U.S. 98, 108, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010).

{¶ 21} The determination of whether police questioning of a prison inmate amounts to custodial interrogation was addressed by the United States Supreme Court in *Howes v. Fields*, ⸺ U.S. ⸺, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012). In *Howes*, the defendant was escorted from his prison cell by a corrections officer to a conference room where he was questioned by two sheriff's deputies about criminal activity that he had allegedly engaged in before he entered prison. At no time during the questioning was the defendant given *Miranda* warnings or advised that he did not have to speak with the deputies. However, defendant was told more than once that he was free to leave the interview and return to his cell. The questioning lasted between five and seven hours, during which time the defendant was free of restraints and the door to the conference room was occasionally open. While the defendant stated that he no longer wished to speak to the deputies several times during the interview, he never stated that he wished to return to his cell. According to the defendant, one of the deputies used a "very sharp tone" during the interview. At some point during the interview, the defendant confessed and the interview concluded. The defendant was escorted back to his cell 20 minutes later, after his normal bedtime. *Id.* at 1192–93.

{¶ 22} In examining whether the defendant was in custody and entitled to be apprised of his *Miranda* rights prior to questioning, the court stated: " 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Id*. at 1189. "In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." (Internal quotations and citation omitted.) *Id*. In evaluating whether an inmate would have felt free to leave, a court must consider the totality of the circumstances. In so doing, the court should be mindful of the following relevant factors: (1) the location of the questioning, (2) its duration, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning. *Id*. Freedom of movement, standing alone, is not a determinative factor. Indeed, the Howes court cautioned courts to consider "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at 1189–90.

{¶ 23} After articulating the foregoing principles, the court in *Howes* found that "imprisonment alone is not enough to create a custodial situation within

the meaning of *Miranda*." *Id.* at 1190. In so finding, the court reasoned that interrogation of a prison inmate is different from the type of interrogation that was at issue in *Miranda* for at least three reasons: (1) "questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest," (2) "a prisoner, unlike a person who has not been sentenced to a term of incarceration, is unlikely to be lured into speaking by a longing for prompt release," and (3) "a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Id.* at 1190–91.

{¶ 24} In summarizing the test to be applied in cases in which a prison is questioned, the court stated that "the determination of custody should focus on all of the features of the interrogation * * * includ[ing] the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id.* at 1192. Considering all of the circumstances of the questioning, the court found that the defendant was not in custody within the meaning of Miranda. *Id.* The court found it particularly noteworthy that the defendant was told he was free to end the questioning and return to his cell. *Id.* at 1193.

{¶ 25} Likewise, we find that appellant was not in custody for purposes of *Miranda* in this case. Notably, appellant in this case actually invited Kantura to the prison to speak with him regarding his involvement in this case. He was transferred to an administrative room within the prison, where the initial questioning lasted less than 30 minutes. While it is true that appellant was handcuffed during the interview, this fact would not have alarmed appellant, who was accustomed to life as a prison inmate and the restraints that are routinely employed within prisons. *State v. Platt*, 12th Dist. Warren No. CA2013–12–116, 2014–Ohio–3450, ¶ 23. Moreover, there is no evidence that appellant attempted to stop the interview or resist questioning at any point during the process. Rather, appellant freely volunteered the information he provided to Kantura with the hope that providing such information would allow him to receive a reduction in his prison sentence.

{¶ 26} Upon consideration of the totality of circumstances present in this case, and in light of the fact that Kantura's interview took place at appellant's request, we find that a reasonable person in appellant's position would have felt free to terminate the interrogation and return to his cell. Further, we find that the circumstances surrounding the interrogation do not present the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*. In that regard, we agree with the trial court's statement that "there are no facts or even argument to indicate any coercion by police." Thus, we conclude that appellant was not in custody within the meaning of

25

*Miranda*, and was therefore not entitled to *Miranda* warnings prior to police questioning.

{¶ 27} Accordingly, appellant's first assignment of error is not well-taken.

*Nelson*, 2016-Ohio-7115 at ¶¶17-27.

The Court finds the state appellate court's determination was a reasonable application of clearly established federal law. While Nelson was physically in "custody" because he was serving a sentence on an unrelated conviction, he was not in *Miranda* custody at the time of his August 6 and 27, 2012 interviews with Detective Kantura. The circumstances surrounding his interviews "were not those generally thought to exert the coercive pressure that *Miranda* was designed to guard against." *Holland v. Rivard*, 800 F.3d 224, 237 (6th Cir. 2015). Indeed, the entire reason Detective Kantura visited Nelson for questioning on August 6, 2012 was because Nelson requested to speak to a detective regarding an unspecified homicide. (Doc. No. 7-2 at Tr. 29-30, 19.) *See Schreane v. Ebbert*, 864 F.3d 446, 451 (6th Cir. 2017)("suspect-initiated contact with the police is not custody for *Miranda* purposes"). Nelson was not confronted with any evidence or allegations to suggest he was involved in the murder during either interview. While Detective Kantura returned on August 27, 2012 with several follow up questions regarding his initial statements, she testified she did not view him as a suspect during either interview. (Doc. No. 7-2 at Tr. 21, 25.) This testimony supported by the fact that following the two interviews with Detective Kantura, Nelson had no further contact with the police regarding the murder until nearly two years later, when Nelson again initiated contact with the police. (*Id*. at Tr. 45-46.) The absence of threats or suggestions of arrest are factors which weigh against finding a suspect was in *Miranda* custody. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Moreover, the factors enumerated by the Supreme Court in *Howes* support a finding

26

Nelson was not in custody for purposes of *Miranda*.  Detective Kantura interviewed Nelson in a small administrative room inside the prison.  (Doc. No. 7-1, Exh. 18.)  For an individual already incarcerated, "questioning in a jailhouse conference room likely does not involve 'the same inherently compelling pressures that are often present when a suspect is yanked from familiar surroundings in the outside world and subjected to interrogation in a police station.'"  *Holland*, 800 F.3d at 238 (quoting *Howes*, 132 S.Ct. at 1191).  Moreover, the initial questioning lasted less than a half hour, also supporting the conclusion Nelson was not in *Miranda* custody.  (Doc. No. 7-2 at Tr. 19.)

Moreover, statements made during the questioning confirm Nelson was not a suspect during either interview.  The murder had occurred over two years prior and Nelson had not been questioned regarding it until he requested to speak with the police.  Detective Kantura testified Nelson told her he was at the scene of the murder, but made it clear he did not shoot anyone, including the victim.  (*Id.* at 16-17.)  While Detective Kantura followed up with Nelson to verify some of the details he had provided, she continued to view him as a witness, not a suspect, to a murder.  (*Id.* at 21.)  At the conclusion of both interviews, Nelson was not arrested for his role in the murder and was instead released back into the same prison where he had been incarcerated.  He had no further contact with the police regarding this matter until 2014.  *See Schreane*, 864 F.3d at 453 (finding no *Miranda* custody when a prisoner initiated contact with the police, was released after questioning, and was not indicted for the murder until three years after the questioning).

Only one of the *Howes* factors weighs against finding Nelson was not in *Miranda* custody: the use of handcuffs during the interviews.  However, this lone factor weighing against

27

the state appellate court's determination is not enough to warrant habeas relief.  *See Simpson v.*

*Warden, Warren Correctional Institution*, 651 Fed.Appx. 344, 355 (6th Cir. 2016) ("Because

some factors suggest that Simpson was in custody on April 24, and others do not, AEDPA bars

us from granting Simpson relief on this claim."); *Schreane*, 864 F.3d at 453 ("the fact that at

least one factor weighs against the state court's ruling is not enough.").

    In sum, considering the totality of the circumstances, the Court finds Nelson was not in

custody for purposes of *Miranda* when he was questioned by Detective Kantura.  Thus, the state

appellate court's determination the state trial court did not err in denying Nelson's motion to

suppress was not an unreasonable application of clearly established federal law, warranting

federal habeas relief.

    Nelson also challenges the voluntariness of his confessions.  He argues

even though he was advised of his *Miranda* rights prior to his April and June 2014 interviews

with the police, his waiver was not valid as it was a product of police coercion.  (Doc. No. 9 at

14, 15).  He asserts he was "led to believe the information he provided would lighten his

sentence" and the police never "informed him that they were going to use the information to

*secure a conviction*."  (*Id*. at 14.)(emphasis in original)  However, Nelson did not raise this

argument to the state appellate court.  (*See* Doc. No. 7-1, Exh. 16.)  It is therefore procedurally

defaulted under Ohio's *res judicata* doctrine.

    Assuming, *arguendo*, this issue is not procedurally defaulted, it still has no merit.  As for

Nelson's claim the police  never "informed him that they were going to use the information to

secure a conviction," this assertion has no basis in fact.  Indeed, the police provided Nelson with

his *Miranda* rights three times – in August 2012, April 2014, and June 2014.  (Doc. No. 7-1,

Exh. 7.)  *Miranda* rights, by their very nature, apprise a suspect any statements made "may be used as evidence against him."  *Miranda*, 384 U.S. at 444.

Further, to the extent Nelson argues the promise of a lightened sentence coerced his incriminating statements, this argument also fails.  While "a combination of threats and promises may be sufficient to overbear an interviewee's will and constitute impermissible coercion," Nelson's statements were not coerced.  *See Holland*, 800 F.3d at 241.  The police did not approach Nelson with promises of a lighter sentence, attempting to induce him to speak.  Rather, it was Nelson who initiated contact with the police in April 2014, nearly two years after last speaking with Detective Kantura.  (Doc. No. 7-1, Exh. 7, Doc. No. 7-2 at Tr. 46.)  Nelson spoke with police officers regarding his role in the murder on April 8, 2014 and June 11, 2014.  (Doc. No. 7-2 at Tr. 45, 50.)  During both interviews, Nelson was informed of his *Miranda* rights, which he waived.  (*Id*. at Tr. 47, 60.)  While Nelson may have indicated to the police he was seeking a lighter sentence, the police officers did not make any promises to that effect.  (*Id.* at Tr. 25, 26, 53.)  Nelson's own belief he would receive a lighter sentence by providing this information is not evidence of police coercion.  There is no evidence to suggest his statements were anything less than voluntarily.

Accordingly, the Court recommends Nelson's First Ground for Relief by DISMISSED.

### 2.    Ground Four – Manifest Weight of the Evidence

In his fourth ground for relief, Nelson argues his convictions are against the manifest weight of the evidence.  (Doc. No. 1 at 10.)  He contends the evidence presented at trial was false.  (*Id.*)  He notes the shell casings and live round recovered at the crime scene did not match a .22 hand gun and asserts "no credible evidence found at the scene links him to the charged

29

offenses." (Doc. No. 9 at 30-31.) Respondent asserts a manifest weight of the evidence claim is "noncognizable on federal habeas review." (Doc. No. 7 at 40.)

The state appellate court considered Nelson's claim on direct appeal and rejected it as follows:

{¶ 47} In his final assignment of error, appellant argues that the jury's verdict was against the manifest weight of the evidence. When reviewing a manifest weight claim,

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 48} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id*. It has been long held that the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to decide. *State v. Thomas*, 70 Ohio St.2d 79, 79–80, 434 N.E.2d 1356 (1982). The standard of review is therefore high, and the trial court, with its unique position to resolve the factual issues, enjoys significant deference to determine the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992).

{¶ 49} Appellant argues that the verdict in this case was against the manifest weight of the evidence because "no credible evidence found at the scene links [him] to the charged offenses." In particular, appellant takes issue with the fact that no .22 caliber shell casings or live rounds were found at the crime scene, which allegedly casts doubt on the truthfulness of his statements to police that he was involved in the shooting.

{¶ 50} Despite the absence of any spent .22 caliber shell casings at the crime scene, the coroner that performed the autopsy on Chandler testified that Chandler died as a result of a .22 caliber gunshot wound to the head. In his statements to the police, appellant admitted to using a .22 caliber Walther pistol during the shooting. This same pistol was used by appellant in another shooting that occurred two days prior to the shooting at issue here.

{¶ 51} Regarding the absence of shell casings at the crime scene, an officer

30

with the scientific investigations unit, Chad Culpert, testified that shell casings are not always found at crime scenes. Culpert explained that shell casings may not be found for "any number of reasons." Specifically, Culpert stated that shell casings would not be found if the assailant used a revolver, because a revolver does not expel the casing when it is fired. Additionally, Culpert recounted "numerous cases" where "he found shell casings stuck into the bottom of boots worn by first responders or the tire tread of fire trucks or police cruisers. In sum, Culpert stated that "there is too much intervention before we get there and even a lot of times before the officers get there. You have multiple medical traffic, foot traffic, people running everywhere. It's not uncommon at all not to find shell casings."

{¶ 52} In light of Culpert's uncontroverted testimony, we find that the absence of .22 caliber shell casings at the crime scene does not automatically lead to a conclusion that appellant was not involved in the April 2010 shooting. Rather, appellant's statements to police, in which he consistently acknowledged participation in the April 2010 shooting and provided details concerning said shooting, lead us to conclude that the jury's verdict was not against the manifest weight of the evidence. By extension, we find that appellant's claim that he fabricated his statements to the police in order to lessen his preexisting prison sentence to be untenable.

{¶ 53} Accordingly, appellant's fourth assignment of error is not well-taken.

*Nelson*, 2016-Ohio-7115 at ¶¶47-53.

It is well established manifest weight of the evidence claims are not cognizable on federal habeas review. *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir.2006); *accord Howard v. Tibbals*, 2014 WL 201481 at * 16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio Jan. 17, 2006). *See also Gibson v. Miller*, 2016 WL 6277229 at *1 (N.D. Ohio Oct. 27, 2016)("contentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims."). Under Ohio law, an argument a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of

justice that the conviction must be reversed and a new trial ordered.'"  *Hess,* 2006 WL 2090093

at *7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983).

Because a federal district court does "not function as an additional state appellate court, vested

with the authority to conduct such an exhaustive review," this Court cannot consider whether

Nelson's conviction was against the manifest weight of the evidence.  *See id.*

In addition, even if the Court were to construe this claim as a constitutional challenge to

the sufficiency of the evidence, it would be procedurally defaulted.  Similar to Grounds Two and

Three,[8] while Nelson raised a manifest weight of the evidence claim to the state appellate court,

he did not present this claim to the Supreme Court of Ohio.  (Doc. No. 7-1, Exh. 16, 20.)  As

Nelson did not make this argument to the Supreme Court of Ohio on direct appeal, he is now

foreclosed from doing so by virtue of *res judicata*.  *See Durr*, 487 F.3d 423 at 432.  *See also*

*Pedelski*, 576 F.3d at 605 ("In situations in which a petitioner has failed to fairly present federal

claims to the state courts, and a state procedural rule now prohibits the state court from

considering them, the claims are considered procedurally defaulted.").

Accordingly, because Nelson's Fourth Ground for Relief is not cognizable in a federal

habeas proceeding, the Court recommends it be DISMISSED.

---

[8]     Ground Three, which argues the trial court erred in denying his Rule 29 Motion, can
also be construed as a sufficiency of the evidence claim.  However, as discussed
*supra*, the claim is procedurally defaulted as well.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date:  January 31, 2019                           *s/ Jonathan D. Greenberg*
                                                  Jonathan D. Greenberg
                                                  United States Magistrate Judge


### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  **28 U.S.C. § 636(b)(1). Failure to** file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).